UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| MARVIN E. JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 07:07-CV-155-O |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on May 9, 2008. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

Procedural History: On May 6, 2004, plaintiff Marvin Jones ("Plaintiff" or "Jones") filed an application for disability insurance benefits claiming disability due to an unstable mental health condition and loss of sight in his right eye. (Administrative Record (hereinafter "Tr.") at 68, 82, 108). He alleged a disability onset date of January 1, 1992. (Tr. at 82).

The Administrative Law Judge ("ALJ") conducted a hearing on October 18, 2006 at which Jones appeared without counsel. (Tr. at 308-319). Jones testified on his own behalf. The ALJ also heard testimony from Christy Wilson, a vocational expert. (Tr. at 316-318). On December 28, 2006, the ALJ denied Plaintiff's request for benefits, finding that the claimant is not disabled because if he stopped using drugs and alcohol, he would be capable of making a successful adjustment to work that exists in significant numbers in the national economy. (Tr. at

25).

Plaintiff timely requested a review of the ALJ's decision by the Appeals Council and on May 23, 2007, the Appeals Council denied his request. (Tr. at 7). Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

Plaintiff filed his federal complaint on October 15, 2007. Defendant filed an answer on December 5, 2007. On April 21, 2008, Plaintiff filed his brief, followed by Defendant's brief on May 21, 2008. Plaintiff did not file a reply brief.

<u>Standard of Review - Social Security Claims</u>: When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment. *Villa*, 895 F. 2d 1022 (citations omitted). Where the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez v. Barnhart*, 415 F.3d 461(5th Cir. 2005).

<u>Discussion</u>: To prevail on a claim for disability insurance, a claimant bears the burden

of establishing that he or she is disabled, defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505. Substantial gainful activity is defined as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the first four steps, a claimant has the burden of proving that his disability prevents him from performing his past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove there is other substantial gainful activity that the claimant can perform. *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). "A finding that a claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In this case, the ALJ proceeded to step five. She found that Plaintiff's loss of vision in his right eye, schizophrenia, and anti-social personality disorder are severe impairments that resulted in moderate restriction of activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence or pace. (Tr. at 19). She also found that including his substance abuse disorder, Plaintiff's residual functional capacity would be compromised by an expectation that he would be away from the work station two to three hours per day resting or reclining due to pain and discomfort and would be unable to complete a work day without interruptions from psychologically based symptoms or to perform

3

at a consistent pace without unreasonable number of rest periods. (Tr. at 22). She found that if he discontinued his substance abuse, he would have the residual functional capacity to an unlimited range of work with no exertional limitations. (Tr. at 24). He would be occasionally limited to reading of fine print, would require work in relative isolation with limited contact with peers and supervisors and would be able to perform routine, repetitive, low stress work. (Tr. at 24). After hearing the testimony of the vocational expert, the ALJ concluded that if Plaintiff discontinued his substance abuse, he would be capable of making a successful adjustment to work that exists in significant numbers in the national economy. (Tr. at 25) She further found that because Plaintiff would not be disabled if he stopped the substance abuse, his substance abuse disorder is a contributing factor material to the determination of disability and, therefore, he has not been disabled within the meaning of the Social Security Act at any time from the date of his application through the date of the ALJ's decision. (Tr. at 25). She therefore denied Plaintiff's request for benefits. (Tr. at 25).

Plaintiff claims that the ALJ erred in failing to fully and fairly develop the record regarding his intellectual functioning and suggests that he qualifies as mentally retarded under Listing 12.05, citing to IQ scores of "below 40" and 60 assessed in 1998 and 2001, respectively. Plaintiff argues that had the ALJ considered these scores, he would have met listing 12.05.

If a claimant's impairment is in the Listing of Impairments or is found to be equivalent to a listed impairment, this raises the presumption of disability that makes further inquiry into work ability unnecessary. *See Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885 (1990). The claimant has the burden of proving that an impairment meets or equals a listing. *See id.* at 530-31. To "meet" a listing, a claimant's impairment must satisfy all of the criteria of that listing. *See* 20

C.F.R. § 404.1525(c)(3).

In order to meet Listing 12.05 for mental retardation, an individual (1) must have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22" and (2) must satisfy the criteria listed in subsection A, B, C, or D. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Subsection (A) applies when a claimant has "[m]ental incapacity evidenced by dependence upon others for personal needs (e.g. toileting, eating dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded." *Id*. at § 12.05(A). Under subsection (B), the required level of severity for mental retardation is met when the claimant has a "valid verbal, performance, or full scale IQ of 59 or less." *Id*. at § 12.05(B). The requirements of subsection (C) are met when the claimant has a valid verbal, performance, or full scale I.Q. score of 60-69 inclusive, *and* a physical or other mental impairment imposing additional and significant work-related limitations of function. *Id*. at § 12.05(C). Subsection (D) defines an impairment to include a valid verbal, performance, or full scale IQ of 60-70, resulting in at least two of the following: (1) marked restriction of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id*. at § 12.05(D)

The ALJ did not discuss Listing 12.05 in her decision. However, Plaintiff did not allege that he was disabled due to mental retardation in his benefits application, in other disability reports he submitted or in the hearing before the ALJ. He alleged that he was disabled due to "mental health (mind is unstable)" but did not cite mental retardation. (Tr. at 82). The ALJ did

specifically discuss Listings 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), 12.08 (Personality Disorders) and 12.09 (Substance Addiction Disorders). (Tr. at 19, 22).

A review of the record reveals two IQ scores under 70. First, on March 12, 1998, psychiatrist William Bass, M.D. reported, with respect to psychological findings: "[Plaintiff] was difficult to test and the psychologist questions the reliability. His Ammons Quick Test gave an IQ of below forty, not being able to be scaled . . . Notably the psychologist noted extreme intellectual depravation and I question dementia possibly due to alcoholism." Tr. at 152.[1] Because the reliability of this examination is questionable, the IQ score does not qualify as a reliable or "valid" score under Listing 12.05. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Second, a May 3, 2001 clinic note from the Texas Department of Criminal Justice indicates that Plaintiff received a score of 60 on an intelligence test, "which qualified him for further intelligence testing." (Tr. at 219). Although it is not evident that this score was assessed by an acceptable medical source under the Social Security Regulations (*See* 20 C.F.R. § 416.913), the court will proceed in determining whether the ALJ erred in not finding that Plaintiff met Listing 12.05.

With an IQ score of 60, Plaintiff could meet Listing 12.05 under either subsection (C) or (D). Under either subsection, he must meet the requirements of the introductory paragraph (i.e. that he has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22"). 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. There is no evidence in the record that Plaintiff was ever diagnosed as mentally retarded or had

---

[1] An IQ test performed in 1982, before the alleged onset of disability, concluded that Plaintiff's IQ scores were 73 for verbal, 70 for performance and 72 for full scale. (Tr. at 188).

significant deficits in adaptive functioning before age 22. In fact, the evidence suggests to the contrary. Clinical psychologist Leon Morris, Ed. D., examined Plaintiff on October 22, 1982 when he was 21 years old. (Tr. at 187). He reported Weschler IQ scores of 73 (verbal), 70 (performance) and 72 (full scale). (Tr. at 188). Notably, he reported that Plaintiff's "level of adaptive functioning [was] *significantly above* the level suggested by his present IQ scores." (Tr. at 189 (emphasis added)). His Axis I diagnoses for Plaintiff were Schizophrenia, Paranoid Type, Chronic; Cannabis Abuse, Continuous; Amphetamine Abuse, in Remission?; and Borderline Intellectual Functioning. *Id*. He did not diagnose Plaintiff with mental retardation but concluded that Plaintiff "is an antisocial individual with limited intelligence who is suffering from a chronic mental illness compounded by continuous marijuana abuse." *Id*. Because the medical evidence does not demonstrate a significant subaverage intellectual or adaptive functioning by Plaintiff before age 22, he can not meet the requirements for Listing 12.05. In addition to the fact that his IQ scores do not conclusively meet the Listing, Plaintiff also fails to identify any evidence of the restrictions or impairments required to meet any of the subsections under Listing 12.05. Therefore, the ALJ's decision is supported by substantial evidence.

Plaintiff claims that the ALJ failed to properly take into account GAF scores assigned to Plaintiff, all of which were below 50. GAF is an acronym for Global Assessment of Functioning. "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social and occupational functioning.'" *Boyd v. Apfel*, 239 F.3d 698, 700 n. 2 (5th Cir. 2001) (quoting American Psychiatric Assoc. Diagnostic and Statistical Manual at 32) (4th ed. 1994)). Plaintiff argues that these scores are wholly inconsistent with the ALJ's conclusion that Plaintiff suffers from "mild" limitations in social functioning and that had

7

the ALJ provided these GAF scores to the vocational expert in her hypothetical, a finding of disability at Listings 12.04, 12.05 and 12.08 would have been warranted.

Marked difficulty in maintaining social functioning is a factor in a determination under Listings 12.04(B), 12.05(D) and 12.08(B). However, under each of those Listings, such difficulties must be accompanied by either (1) marked restriction of activities of daily living, (2) marked difficulties in maintaining concentration, persistence, or pace, or (3) repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(B), 12.05(D), and 12.08(B). Although Plaintiff challenges the ALJ's findings with respect to Plaintiff's social functioning, he does not allege error with respect to the ALJ's findings that Plaintiff had no restriction in his activities of daily living, had moderate difficulties in maintaining concentration, persistence or pace, and had no episodes of decompensation of extended duration. (Tr. at 22). Therefore, even had the ALJ found that Plaintiff suffered from a marked restriction with respect to his social functioning, that finding would not change the result under any of the Listings.

In addition, while the ALJ did not specifically reference Plaintiff's GAF scores in her decision, the GAF scores are contained in treatment records which were referenced and relied upon in her decision. It is "within the discretion of the ALJ to determine the credibility of the various medical reports in the record . . . ." *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). The ALJ discussed the treatment Plaintiff received, as well as the diagnoses given by these health care providers. (Tr. at 19-21, 180, 185, 259, 274). The ALJ evaluated Plaintiff's treatment records and cited to them in her decision. (Tr. at 19-20). She could have permissibly concluded that the GAF scores were entitled to less weight or conflicted with the medical

8

evidence and opinions in the record. Further, the GAF score of 0 cited by Plaintiff was given on October 18, 2004 solely because the assessment was "deferred because of credibility problems" (Tr. at 245). The court finds no error in the ALJ's failure to specifically reference the GAF scores or provide them to the vocational expert and Plaintiff cites no authority for the proposition that GAF scores are solely determinative of disability or should be viewed in isolation without consideration of the other objective medical evidence in the record.

The ALJ's decision is further supported by evidence in the record of malingering and suggestions that Plaintiff's mental problems were caused by his abuse of drugs and alcohol. Plaintiff's Axis I diagnoses include alcohol dependence, alcohol-related disorder, substance abuse and malingering. (Tr. 180, 185, 245). In an August 1999 examination report, Dr. Morris concluded that Plaintiff's "test performance on a variety of instruments indicated rather severe and obvious malingering. He appeared to be fabricating or exaggerating symptoms of mental disorders in an apparent effort to avoid prosecution." (Tr. at 185). In another exam from October 2004, Dr. Morris noted that Plaintiff "exhibited serious credibility problems." (Tr. at 241). He stated that Plaintiff "significantly overstated his symptoms" and "endorsed a large number of symptoms of depression which were not clinically evident . . ." (Tr. at 243). Notably, none of the examining physicians diagnosed Plaintiff with mental retardation, although some reported Axis II diagnoses of borderline intellectual functioning. (Tr. at 180, 185, 245). In fact, a 1999 report from Jack R. Tomlinson, M.D. and Dr. Morris concluded that Plaintiff was not a mentally retarded person as defined in the Mentally Retarded Person's Act, Art. 5547-300, Vernon's Texas Civil Statutes. (Tr. at 180). That same report indicates that Plaintiff was administered the Weschler IQ test, which suggests that his scores on the test did not indicate

9

mental retardation. *Id*.

Finally, Plaintiff claims that the ALJ failed to fully develop the record with respect to his mental impairments in light of his low IQ and GAF scores. "The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citations omitted). The Fifth Circuit has held that to obtain reversal for an ALJ's failure to fully develop the record, a plaintiff must demonstrate prejudice. *Brock v. Chater*, 84 F.3d 726, 737 (5th Cir.1996) (explaining that plaintiff must "show that [s]he 'could and would have adduced evidence that might have altered the result' ") (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir.1984)). Therefore, he must show that he could and would have adduced evidence that might have altered the result. Plaintiff has failed to make this required showing.

Based upon the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence. While there is evidence in the record to suggest that Plaintiff is of borderline intelligence, the evidence does not show that he is mentally retarded or that his condition meets the requirements of Listing 12.05.

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the District Court enter its order AFFIRMING the decision of the Commissioner and DISMISSING this action with prejudice. A copy of this recommendation shall be transmitted to counsel for the parties.

Signed this 27th day of October, 2008

*[signature: Wm. F. Sanderson, Jr.]*

WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.